**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| YANCY PIERSON, Individually and for Others Similarly Situated<br><br>v.<br><br>P3 SPECIALIZED TRAINING, LLC d/b/a HP SECURITY & PATROL | **Case No. 4:26-CV-2669**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Yancy Pierson ("Pierson") brings this collective action against P3 Specialized Training, LLC d/b/a HP Security & Patrol ("HP Security") to recover unpaid overtime wages and other damages.

2. HP Security employed Pierson as one of its Straight Time Employees (defined below).

3. Pierson and the other Straight Time Employees regularly worked more than 40 hours a week.

4. But HP Security did not pay them overtime.

5. Instead, HP Security paid Pierson and its other Straight Time Employees the same hourly rate (based on their assigned patrol location(s)) for all hours worked, including those worked after 40 in a workweek (a practice known as "straight time for overtime").

6. HP Security applied its illegal straight time for overtime pay scheme to Pierson and its other Straight Time Employees regardless of any individualized factors.

7. HP Security's uniform straight time for overtime pay scheme violated the Fair Labor Standards Act ("FLSA") by depriving Pierson and the other Straight Time Employees of the "time and a half" overtime premium they are owed for hours worked over 40 in a workweek.

**JURISDICTION & VENUE**

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C.A. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      This Court has general personal jurisdiction over HP Security because it is a domestic limited liability company that maintains its headquarters in Texas.

10.     Venue is proper because HP Security is headquartered in Humble, Harris County, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

**PARTIES**

11.     Pierson worked for HP Security as a Commission Officer (also known as a Security Guard) in and around Houston, Texas from approximately November 2023 through November 2025.

12.     Throughout his employment, HP Security paid Pierson under its uniform, illegal straight time for overtime pay scheme.

13.     Pierson's written consent is attached as **Exhibit 1**.

14.     Pierson brings this collective action on behalf of himself and all other similarly situated employees who HP Security paid under its illegal straight time for overtime pay scheme.

15.     HP Security paid each of these employees the same hourly rate (based on their assigned patrol location(s)) for all hours worked, including those hours worked over 40 in a workweek in willful violation of the FLSA.

16.     The collective of similarly situated employees is defined as:

> **All HP Security employees who were paid under its straight time for overtime pay scheme at any time during the past 3 years (the "Straight Time Employees").**

17.     HP Security is a Texas limited liability company headquartered in Humble, Texas.

18.     HP Security may be served with process through its registered agent: **Troy Gentris, 107 1st Street West, Suite 206, Humble, Texas 77338**, or wherever he may be found.

2

**FLSA COVERAGE**

19.     At all relevant times, HP Security was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20.     At all relevant times, HP Security was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.     At all relevant times, HP Security was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, handguns, flashlights, and other security equipment—that have been moved in or produced for commerce.

22.     At all relevant times, HP Security has had an annual gross volume of sales made or business done of not less than $1,000,00 each year.

23.     At all relevant times, Pierson and the other Straight Time Employees were HP Security's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

24.     At all relevant times, Pierson and the other Straight Time Employees were engaged in commerce or in the production of goods for commerce.

25.     HP Security uniformly paid its Straight Time Employees the same hourly rate (based on their assigned patrol location(s)) for all hours worked, including those worked after 40 in a workweek.

26.     HP Security applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title.

27.     As a result of HP Security's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, include Pierson) did not receive overtime at the premium rates required by the FLSA.

28.     By paying straight time for overtime, HP Security did not pay its Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

29.     HP Security's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

30.     HP Security provides private security services, including armed/unarmed guards, bodyguards, and patrol services to its clients.

31.     To meet its business objectives, HP Security hires security guards, like Pierson and the other Straight Time Employees, to provide the security services it markets to its clients.

32.     HP Security uniformly pays Pierson and its other Straight Time Employees on an hourly basis.

33.     Pierson and the other Straight Time Employees regularly work more than 40 hours in a week.

34.     But HP Security does not pay Pierson and its other Straight Time Employees overtime.

35.     Instead, HP Security pays Pierson and its other Straight Time Employees the same hourly rate (based on their assigned patrol location(s)) for all hours worked, including those worked over 40 in a workweek.

36.     While exact job titles may differ, these employees are subjected to the same or similar illegal straight time for overtime pay scheme for similar work.

37. For example, Pierson worked for HP Security as a Commission Officer (also known as a Security Guard) in and around Houston, Texas from approximately November 2023 through November 2025.

38. As a Commission Officer, Pierson's primary responsibilities included protecting property, personnel, and visitors by patrolling premises, monitoring surveillance systems, and controlling access points.

39. Pierson was HP Security's hourly employee.

40. Specifically, HP Security paid Pierson set hourly rates (for all hours worked) depending on which patrol location(s) it assigned him to guard.

41. For example, when HP Security assigned Pierson to patrol Lilly Grove, it paid him $22-$25/hour (for all hours worked at that patrol location, including those worked over 40 in a workweek).

42. Likewise, when HP Security assigned Pierson to patrol Coastal Water, it paid him $21.50/hour (for all hours worked at that patrol location, including those worked over 40 in a workweek).

43. And when HP Security assigned Pierson to CWA Shift Coverage, it paid him $18/hour (for all hours worked at that patrol location, including those worked over 40 in a workweek).

44. Pierson reported his hours worked to HP Security by clocking in and out on HP Security's timekeeping portal.

45. HP Security's records reflect the hours Pierson worked each week.

46. Pierson regularly worked more than 40 hours a week while employed with HP Security.

47. In fact, Pierson typically worked 42 to 72 hours a week.

48. Despite knowing Pierson regularly worked overtime, HP Security did not pay him overtime wages for the hours he worked over 40 in a workweek.

49.    Instead, HP Security paid Pierson under its uniform, illegal straight time for overtime pay scheme.

50.    For example, during the two-week pay period from February 10, 2025 through February 23, 2025, Pierson worked 135.5 hours (55.5 of which were overtime hours):



| PAY PERIOD | |
|---|---|
| Period Beginning | 02/10/2025 |
| Period Ending: | 02/23/2025 |
| Pay Date: | 02/28/2025 |
| Total Hours: | 135.50 |

51.    Specifically, Pierson worked 12 hours at Lilly Grove, 80 hours at Coastal Water, and 43.5 hours on CWA Shift Coverage.

52.    But HP Security did not pay him "time and a half" of his regular rate of pay for the 55.5 hours of overtime Pierson worked in those workweeks.

53.    Instead, HP Security paid Pierson the same hourly rate based on his assigned patrol location ($25/hour for Lilly Grove, $21.50/hour for Coastal Water, and $18/hour for CWA Shift Coverage) for all 135.5 hours he worked those workweeks—including his 55.5 hours of overtime:

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| CWA Shift Coverage | 43.50 | 18.00 | 783.00 | 1,593.00 |
| Lilly Grove/ bridge | 12.00 | 25.00 | 300.00 | 1,950.00 |
| Coastal Water | 80.00 | 21.50 | 1,720.00 | 8,256.00 |
| Holiday Pay | - | 18.50 | 0.00 | 74.00 |

54.    So, rather than receiving $31.03/hour[1] for each hour of overtime he worked, Pierson only received the same hourly rate ($25/hour for Lilly Grove, $21.50/hour for Coastal Water, and $18/hour for CWA Shift Coverage) for all his hours worked at each respective location—including his overtime hours.

---

[1] 1.5 times his regular rate of pay ($20.69) for those workweeks.

55.    Similarly, during the two-week pay period from June 16, 2025 through June 29, 2025, Pierson worked 91.5 hours (11.5 of which were overtime hours):



56.    Specifically, Pierson worked 12.5 hours at Lilly Grove and 79 hours at Coastal Water.

57.    But HP Security did not pay him "time and a half" of his regular rate of pay for the 11.5 hours of overtime Pierson worked in those workweeks.

58.    Instead, HP Security paid Pierson the same hourly rate based on his assigned patrol location ($22/hour for Lilly Grove and $21.50/hour for Coastal Water) for all 91.5 hours he worked those workweeks—including his 11.5 hours of overtime:

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Regular Pay | - | 18.50 | 0.00 | 74.00 |
| CWA Shift Coverage | - | 18.00 | 0.00 | 3,249.00 |
| Lilly Grove/ bridge | 12.50 | 22.00 | 275.00 | 4,499.00 |
| Coastal Water | 79.00 | 21.50 | 1,698.50 | 23,800.50 |
| Holiday Pay | - | 18.50 | 0.00 | 74.00 |

59.    So, rather than receiving $32.35/hour[2] for each hour of overtime he worked, Pierson only received the same hourly rate ($22/hour for Lilly Grove and $21.50/hour for Coastal Water) for all his hours worked at each respective location—including his overtime hours.

60.    Likewise, during the two-week pay period from October 20, 2025 through November 2, 2025, Pierson worked 116 hours (36 of which were overtime hours):

---

[2] 1.5 times his regular rate of pay ($21.57) for those workweeks.

```
PAY PERIOD
Period Beginning        10/20/2025
Period Ending:          11/02/2025
Pay Date:               11/07/2025
Total Hours:               116.00
```

61.     Specifically, Pierson worked 14 hours at Lilly Grove, 80 hours at Coastal Water, and 22 hours on CWA Shift Coverage.

62.     But HP Security did not pay him "time and a half" of his regular rate of pay for the 36 hours of overtime Pierson worked in those workweeks.

63.     Instead, HP Security paid Pierson the same hourly rate based on his assigned patrol location ($22/hour for Lilly Grove, $21.50/hour for Coastal Water, and $18/hour for CWA Shift Coverage) for all 116 hours he worked those workweeks—including his 36 hours of overtime:

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Regular Pay | - | 18.50 | 0.00 | 462.50 |
| CWA Shift Coverage | 22.00 | 18.00 | 396.00 | 5,445.00 |
| Lilly Grove/ bridge | 14.00 | 22.00 | 308.00 | 6,270.00 |
| Coastal Water | 80.00 | 21.50 | 1,720.00 | 39,108.50 |
| Holiday Pay | - | 18.50 | 0.00 | 74.00 |

64.     So, rather than receiving $31.35/hour[3] for each hour of overtime he worked, Pierson only received the same hourly rate ($25/hour for Lilly Grove, $21.50/hour for Coastal Water, and $18/hour for CWA Shift Coverage) for all his hours worked at each respective location—including his overtime hours.

65.     In other words, because of HP Security's uniformly applied straight time for overtime pay scheme, Pierson did not receive the required "time and a half" overtime premium for the hours he worked over 40 in a workweek.

---

[3] 1.5 times his regular rate of pay ($20.90) for those workweeks.

66. HP Security pays its other Straight Time Employees according to the same illegal straight time for overtime pay scheme it imposed on Pierson.

67. Like Pierson, HP Security pays its other Straight Time Employees on an hourly basis.

68. Like Pierson, HP Security requires its other Straight Time Employees to report their hours worked to HP Security.

69. Thus, just as HP Security maintains records of the hours Pierson worked, it also maintains records of the hours the similarly situated Straight Time Employees worked.

70. HP Security's records show the Straight Time Employees (like Pierson) regularly work more than 40 hours a workweek.

71. Every Straight Time Employee worked more than 40 hours in at least one workweek during the last 3 years.

72. Indeed, like Pierson, the other Straight Time Employees typically work 42 to 72 hours a week.

73. Despite knowing its Straight Time Employees regularly work overtime, HP Security does not pay them premium overtime wages.

74. Instead, HP Security pays its Straight Time Employees the same hourly rate (based on their assigned patrol location(s))for all hours worked, including those worked after 40 in a workweek, in willful violation of the FLSA.

75. HP Security has never paid Pierson and its other Straight Time Employees on a "salary basis." *See* 29 C.F.R. § 541.602.

76. HP Security does not pay Pierson and its other Straight Time Employees a guaranteed salary that is not subject to reduction based on the quantity or quality of work.

77. If Pierson and the other Straight Time Employees work fewer than 40 hours in a workweek, HP Security only pays them for the hours they actually worked.

78.    Because HP Security uniformly fails to pay Pierson and its other Straight Time Employees on a "salary basis," these workers are all non-exempt employees entitled to premium overtime wages.

79.    But HP Security does not pay Pierson and its other Straight Time Employees premium overtime wages for their hours worked after 40 in a workweek in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

80.    Pierson realleges and incorporates all other paragraphs by reference.

81.    Like Pierson, the other Straight Time Employees are victimized by HP Security's uniform, illegal straight time for overtime pay scheme.

82.    Other Straight Time Employees worked with Pierson and indicated they were paid in the same manner, performed similar work, and were subject to HP Security's same illegal straight time for overtime pay scheme.

83.    Based on his experience with HP Security, Pierson is aware HP Security's illegal straight time for overtime pay scheme was imposed on the other Straight Time Employees.

84.    Pierson and the other Straight Time Employees are similarly situated in the most relevant respects.

85.    Even if their precise job duties or specific job titles might vary, these differences do not matter for the purposes of determining their entitlement to premium overtime pay.

86.    Any relevant exempt defenses would require HP Security to pay its Straight Time Employees on a "salary basis."

87.    Because HP Security uniformly fails the "salary basis" test with respect to all its Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

88.    The only *relevant* inquiry is whether the Straight Time Employees were paid "straight time" when they worked more than 40 hours in a workweek (which, by definition, they were).

89. Therefore, the specific job titles of the various Straight Time Employees do not prevent collective treatment.

90. Rather, HP Security's uniform straight time for overtime pay scheme renders Pierson and the other Straight Time Employees similarly situated for the purposes of determining their right to premium overtime pay.

91. HP Security's records reflect the number of hours Pierson and the other Straight Time Employees worked each workweek.

92. HP Security's records also show it paid Pierson and its other Straight Time Employees "straight time" (based on their assigned patrol location(s))—instead of "time and a half" (1.5x) their regular rates of pay—for their overtime hours worked.

93. The back wages owed to Pierson and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

94. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to HP Security's records, and there is no detraction from the common nucleus of liability facts.

95. Therefore, the issue of damages does not preclude collective treatment.

96. Pierson's experiences are therefore typical of the experiences of the other Straight Time Employees.

97. Absent this collective action, many Straight Time Employees will not obtain redress for their injuries, and HP Security will reap the unjust benefits of willfully violating the FLSA.

98. Even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

99. Indeed, the multiplicity of actions would create a hardship to the Straight Time Employees, the Court, and HP Security.

100.    Conversely, concentrating the litigation in one forum will promote judicial economic and consistency, as well as parity among the Straight Time Employees' claims.

101.    Pierson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to proceed as a collective action.

102.    There are many similarly situated Straight Time Employees who have been denied premium overtime pay in willful violation of the FLSA who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join it.

103.    The Straight Time Employees are known to HP Security, are readily identifiable, and can be located through HP Security's business and personnel records.

**HP SECURITY'S VIOLATIONS WERE WILLFUL &
DONE IN RECKLESS DISREGARD OF THE FLSA**

104.    Pierson realleges and incorporates all other paragraphs by reference.

105.    HP Security knew it was subject to the FLSA's overtime provisions.

106.    HP Security knew the FLSA required it to pay non-exempt employees, including Pierson and its other Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

107.    HP Security knew Pierson and each Straight Time Employee worked more than 40 hours in at least one workweek during the relevant period because HP Security required them to report their hours worked to HP Security.

108.    HP Security knew Pierson and its other Straight Time Employees were its hourly employees.

109.    HP Security knew it paid Pierson and its other Straight Time Employees on an hourly basis.

110.    HP Security knew it paid Pierson and its other Straight Time Employees straight time for overtime (based on their assigned patrol location(s)).

111.   HP Security knew it never paid Pierson and its other Straight Time Employees on a "salary basis."

112.   HP Security knew it did not pay Pierson and its other Straight Time Employees any guaranteed salary that was not subject to reduction based on the quantity or quality of work.

113.   HP Security knew it did not pay Pierson and its other Straight Time Employees any guaranteed salary that was not subject to reduction based on their actual hours worked.

114.   Thus, HP Security knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

115.   HP Security knew it needed to pass the "salary basis" test to qualify for any exemption(s) it claimed with respect to Pierson and the other Straight Time Employees.

116.   And Pierson complained to HP Security about not receiving premium overtime pay for his hours worked over 40 in a workweek.

117.   Nonetheless, HP Security did not pay Pierson and its other Straight Time Employees the required "time and a half" premium for their hours worked over 40 in a workweek.

118.   HP Security's decision not to pay non-exempt employees (Pierson and the other Straight Time Employees) premium overtime wages for their hours worked over 40 in a workweek was not reasonable.

119.   HP Security's decision not to pay non-exempt employees (Pierson and the other Straight Time Employees) premium overtime wages was not made in good faith.

120.   HP Security knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

121.   HP Security knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme that deprived Pierson and the other Straight Time Employees of premium overtime wages in violation of the FLSA.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### 29 U.S.C. §§ 201, *ET SEQ.*

122.    Pierson realleges and incorporates all other paragraphs by reference.

123.    Pierson brings his FLSA claims as a collective action on behalf of himself and the other Straight Time Employees pursuant to 29 U.S.C. § 216(b).

124.    HP Security violated, and its violating, the FLSA by employing non-exempt employees (Pierson and the other Straight Time Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they work over 40 in a workweek.

125.    HP Security's unlawful conduct harmed, and continues to harm, Pierson and the other Straight Time Employees by depriving them of the overtime wages they are owed.

126.    Accordingly, HP Security owes Pierson and the other Straight Time Employees the difference between the rate actually paid and the required premium overtime rate for all hours these employees worked over 40 in each workweek.

127.    Because HP Security knew, should have known, or recklessly disregarded whether its straight time for overtime pay scheme violated the FLSA, HP Security owes Pierson and the other Straight Time Employees these back wages for at least the past 3 years.

128.    HP Security is also liable to Pierson and the other Straight Time Employees for an additional amount equal to all their unpaid wages as liquidated damages.

129.    Finally, Pierson and the other Straight Time Employees are entitled to recover their reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

130.    Pierson demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Pierson, individually and on behalf of the other Straight Time Employees, respectfully seeks the following relief:

a)   An Order designating this lawsuit as a collective action and authorizing notice to the Straight Time Employees allowing them to join this action by filing their written consent;

b)   An Order finding HP Security liable to Pierson and the other Straight Time Employees for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c)   A Judgment against HP Security awarding Pierson and the other Straight Time Employees all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d)   An Order awarding attorneys' fees, costs, and expenses;

e)   Pre- and post-judgment interest at the highest applicable rates; and

f)   Such other and further relief as may be necessary and appropriate.

Dated: April 2, 2026

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ Taylor A. Jones*
    Taylor A. Jones
    TX Bar No. 24107823
    Fed. ID No. 3348814
    HKM Employment Attorneys LLP
    1201 Fannin Street, Suite 202
    Houston, Texas 77002
    Phone: (832) 446-9403
    Fax: (832) 356-2684
    Email: tjones@hkm.com

**ATTORNEY IN CHARGE FOR PIERSON AND THE STRAIGHT TIME EMPLOYEES**